UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:03CV67-R

DIANNE FORBES, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF
ROBERT J. FORBES                                                                                    PLAINTIFF

v.

CEMEX, ET AL.                                                                                         DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on Defendants' Motions for Summary Judgment (Dkt. Nos. 41 & 47). Plaintiff has responded (Dkt. # 54). Defendants have filed replies (Dkt. Nos. 58 & 61). This matter is now ripe for decision. For the reasons that follow, Defendants' Motions for Summary Judgment are **GRANTED**.

### BACKGROUND

Plaintiff Dianne Forbes is the executrix for her husband Robert J. Forbes. She brought this action because she did not receive a life insurance payment under a life insurance plan from Mr. Forbes's former employer Cemex, Inc. ("Cemex") insured by Life Insurance Company of North America ("LINA"). Mr. Forbes's last day at Cemex was December 28, 2001. On February 21, 2002, Mr. Forbes died. At no time after that has Mrs. Forbes presented a claim for life insurance benefits to Cemex or LINA. Instead, she filed this suit.

Instead, Mrs. Forbes brings this action alleging fraud based on the alleged forgery of Mr. Forbes's separation agreement. She also alleges negligent misrepresentation, equitable estoppel, and breach of fiduciary duty for Defendants' failure to notify Mr. Forbes of his right to convert his group life insurance plan to an individual life insurance plan**.**

1

**STANDARD**

A movant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" in a summary judgment inquiry only when they could affect the case's outcome under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Stated differently, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id*. Furthermore, an issue of material fact is "genuine" only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

**A. ERISA PRE-EMPTION**

Defendants claim that Mr. Forbes's life insurance plan was an ERISA plan and all of his state law claims are pre-empted. The life insurance plan is an employee welfare benefit plan under ERISA, which defines an employee welfare benefit plan as "any plan...which was established or maintained by an employer...for the purpose of providing its participants or their

beneficiaries...benefits in the event of...death..." 29 U.S.C. § 1002(1). *See also* 29 U.S.C. § 1002(3) ("The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan..."). Title 29 U.S.C. § 1144(a) provides that "the provisions of this title . . . shall supersede any and all state laws insofar as they now or hereafter relate to an employee benefit plan." More specifically, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 2295 (2004). The Sixth Circuit Court of Appeals has recently given some guidance on whether a cause of action relates to an employee benefit plan:

> Therefore, in interpreting ERISA's preemption clause, a court "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995). The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) "mandate employee benefit structures or their administration;" (2) provide "alternate enforcement mechanisms;" or (3) "bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996) (outlining the three categories of state laws recognized in *Travelers* that are preempted by ERISA) (internal citations omitted). Congress did not intend, however, for ERISA "to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *LeBlanc v. Cahill*, 153 F.3d 134, 147 (4th Cir. 1998).

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). Further, if the state law claim is in essence a claim for the recovery of an ERISA plan benefit, it is pre-empted. *Lion's Volunteer Blind Ind., Inc. v. Automated Group Admin., Inc.*, 195 F.3d 803, 808 (6th Cir. 1999). Mrs. Forbes's allegations do implicate the relationship among traditional plan

3

entities, and Mrs. Forbes has only asserted as a remedy that she receive her husband's life insurance benefits (Dkt. # 1, complaint).

Mrs. Forbes, however, is alleging that the Defendants failed to follow state insurance laws in Kentucky or Texas, specifically Tex. Insurance Code Ann. Art. 350 (Vernon 2000)(repealed June 1, 2003). To determine whether the state law provisions fall within the savings clause of 29 U.S.C. § 1144(b)(2)(A) and are not pre-empted by ERISA, the law must satisfy two requirements. *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003). "First, the state law must be specifically directed toward entities engaged in insurance. Second, as explained above the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*. For a law to affect risk-pooling it must affect the substantive terms of the insurance contract by changing the risk borne by insurers and the insured, for example, a law mandating that a certain disease be covered under health insurance contracts. *Allison v. Unum Life Ins. Co. of America*, 381 F.3d 1015, 1027 (10th Cir. 2004). Even if an insurance provision is saved under §514(b)(2)(a) of ERISA, 29 U.S.C. § 1144(b)(2)(a), this court could still find that the insurance provision conflicts with the enforcement provisions, § 502 of ERISA, 29 U.S.C. § 1132. *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 287 (4th Cir. 2003). *See Davila*, 124 S. Ct. at 2500 ("Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.")

This court determines that while the law regulates insurance, the notice requirement does not affect risk-pooling. Even if it did affect risk-pooling, the claim would still be pre-empted as a "separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial

scheme." *Id.* In other words, any claim that Mrs. Forbes is asserting that the Defendants violated either Texas or Kentucky insurance statutes is pre-empted because those laws have been incorporated into the plan. Due to this incorporation, the court's analysis of whether the state law would be violated is the same as whether the Defendants breached the terms and duties of the plan. Therefore, her cause of action is one to determine if Defendants have fulfilled their duties under the plan or if their actions were a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3).

While Mrs. Forbes may not have a state-law claims for negligent misrepresentation, breach of fiduciary duties, or violations of state insurance law, her claims are properly considered under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3):

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id.* Under this section, a plaintiff's only remedy is equitable relief, in other words, categories of relief that were typically available in equity. *Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005). Plaintiff cannot recover for monetary damages by disguising her claim as an equitable one. *Id.* The Sixth Circuit in *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper Inc.*, 382 F.3d 587 (6th Cir. 2004) explained why the plaintiff could not recover monetary damages:

> As used in § 502(a)(3), the Supreme Court has repeatedly held, "equitable relief" refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); cf. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). And "[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally

> been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v. Massachusetts*, 487 U.S. 879, 918-19, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (Scalia, J., dissenting), as quoted with approval in *Great-West*, 534 U.S. at 210, 122 S.Ct. 708. "And '[m]oney damages are, of course, the classic form of legal relief.' " Id. (quoting *Mertens*, 508 U.S. at 255, 113 S.Ct. 2063).

*Id*. at 594. Mrs. Forbes has only sought monetary damages, which are not available to her under ERISA.[1] Therefore, she has no claim against the Defendants.

## B. NEGLIGENT MISREPRESENTATION OR EQUITABLE ESTOPPEL

Even though all of the Forbes's claims are pre-empted or barred because only monetary damages are sought, out of caution, this court will analyze the claims as if they were not pre-empted or otherwise barred. Plaintiff appears to be alleging a claim for negligent misrepresentation or equitable estoppel. The Kentucky Supreme Court has recently adopted elements of negligent misrepresentation from the Restatement 2d of Torts § 552:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

---

[1] Regardless of how Mrs. Forbes states her claims, the remedy for all them seems to be that she would be entitled to the life insurance proceeds.

6

*Pressnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580, 582 (Ky. 2004).

> To make a claim for equitable estoppel, the plaintiff must prove
>
> (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 643 (Ky. Ct. App. 2003).

Mrs. Forbes has not shown a misrepresentation on the part of the Defendants. The last day that her husband worked was December 28, 2001, and he applied for unemployment on January 2, 2002. Mrs. Forbes claims that the health insurance notices that Mr. Forbes received were confusing as to whether his life insurance was still in effect. Nothing in the notices make any reference to life insurance so there is no reasonable basis for the belief that the life insurance was still in effect. Mr. Forbes received several checks after he left for things such as a bonus or payment for unused vacation, but neither of these had listed a deduction for life insurance. The reason for these checks was also sufficiently clear. Mrs. Forbes has presented no evidence about what Mr. Forbes believed about these statements to show his lack of knowledge, which is necessary to prove the first element of equitable estoppel. Additionally, even if there was evidence showing that Mr. Forbes mistakenly believed that he was being sent statements about his life insurance rather than health insurance, Mr. Forbes would have to show "justifiable reliance" under a negligent misrepresentation theory. Mr. Forbes could not justify his reliance on these statements when there is absolutely nothing about life insurance contained in those statements. Further, the evidence supports the likelihood that Mr. Forbes believed his employment ended on December 28, 2001 because he applied for unemployment payments on January 2, 2002.

**C. FRAUD**

Because Mrs. Forbes's claim for forgery has no bearing on her life insurance claim, it is not pre-empted. *See Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995)(discussing that a state law cause of action is not pre-empted if it does not relate to the ERISA plan). Mrs. Forbes claims that Cemex forged her husband's name on his Separation Agreement. First, Mrs. Forbes has no proof that Cemex or its representatives forged his name. Instead, they merely possess an allegedly forged document. Second, forgery itself is not a tort, but under some circumstances forgery may be actionable under fraud theory. There are two types of fraud: fraud by misrepresentation and fraud by omission. The elements for fraud by misrepresentation are "the defendant a) made a material representation; b) which was false; c) which was known to be false or made recklessly; d) which was made with inducement to be acted upon; e) which plaintiff acted in reliance upon; and f) which caused plaintiff injury." *Id.* at 640. The elements for fraud by omission are "that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and d) that the plaintiff suffered actual damages." *Id*. at 641. Mrs. Forbes cannot show that because of the forgery her husband either relied upon the document and was injured or that the document induced her husband to act.

Mrs. Forbes cannot show any harm from the alleged forgery. First, the Separation Agreement has no bearing on the benefits analysis. Second, Mrs. Forbes cannot show any harm caused by the alleged forgery. Finally, Mr. Forbes has not taken any action to his detriment in reliance on or induced by whether the document was signed or not. Because there is no harm from the alleged forgery and it cannot be proven that any of the Defendants are guilty of the forgery,

this claim must be dismissed.

### D. CLAIM FOR BENEFITS

Mr. Forbes was terminated from employment on December 28, 2001. His former employer Cemex cancelled its group life insurance policy on December 31, 2001. The policy contained a conversion privilege used to convert the group life policy into an individual one:

> **Conversion Privilege of Life Insurance**
>
> If coverage for an Insured ends for any reason, except for non-payment of premium, he or she may apply for a conversion of life insurance....
>
> To apply for conversion insurance, the Insured must within 31 days after coverage under the Policy ends, submit an application to the Insurance Company and pay the required premium...
>
> If the Insured dies during the 31 day conversion period, the Death Benefit will be paid under the Policy regardless of whether he or she applied for conversion insurance.
>
> *Extension of Conversion Period*
>
> If an Insured is eligible for conversion insurance and is not notified of this right at least 15 days prior to the end of the 31 day conversion period, the conversion period will be extended. The Insured will have 15 days from the date notice is given to apply for conversion insurance. In no event will the conversion period be extended beyond 90 days...
>
> If the Insured dies during the extended conversion period, but more than 31 days after his or her coverage under the Policy terminates, Life Insurance Benefits will not be paid under the Policy...

(Dkt. # 47). Mr. Forbes did not convert his policy within 31 days after his termination. Mrs. Forbes claims that Mr. Forbes was not notified of his conversion right after his employment was terminated. If this were true, under the terms of the policy, Mr. Forbes's conversion right would be extended for 90 days unless he died after the 31 days. Mr. Forbes died after the 31 days from his termination–he died on February 21, 2002. The plan provided for what would happen if the

9

Defendants failed to give him notice after the plan terminated–his time to convert to life insurance would be extended 90 days unless he died after the 31 days had passed but before the 90 days had passed. In the plan, the Defendants have recognized a duty to give notice and a remedy for failure to give notice. The Defendants did nothing improper under the terms of the plan sufficient to give rise to an ERISA breach of fiduciary duty claim. Further, no other remedy has been provided in either Kentucky or Texas statutes for failure to give notice after termination of the plan.

Mrs. Forbes does not have a claim for benefits for two reasons. First, she can not show that under the plan she is entitled to benefits. Second, she has not exhausted her administrative remedies because she did not make a claim for benefits or make a showing that such a claim would have been futile. *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 2005).

## CONCLUSION

Defendants' Motions for Summary Judgment are **GRANTED**.